658 F.Supp. 9 (1986)
UNITED STATES of America, Plaintiff,
v.
STATE OF NEW JERSEY, et al., Defendants.
Civ. A. Nos. 950-73, 77-2054 and 79-184.
United States District Court, D. New Jersey.
October 14, 1986.
*10 Gerald L. George, U.S. Dept. of Justice, Civil Rights Div., Washington, D.C., Thomas Greelish, U.S. Atty., Newark, N.J., for U.S.
Thomas P. Calligy, Asst. City Atty., Dept. of Law, Hoboken, N.J., for Hoboken.
Mark Fleming, Deputy Atty. Gen., Trenton, N.J., for the State of N.J.
David Grosman, Schneider, Cohen & Solomon, Jersey City, N.J., for intervenors Sheridan, et al.
Jacqueline Drakeford, City Sol., Plainfield, N.J.
N. Thomas Foster, City Atty., Dept. of Law, Camden, N.J.
Jonathan M. Hyman, Constitutional Litigation Clinic, Newark, N.J.
Ralph L. DeLuccia, Jr., Corp. Counsel, Paterson, N.J.
Stanley Adamcik, City Atty., Dept. of Law, Trenton, N.J.
Thomas Fodice, Asst. Corp. Counsel, City of Jersey City, Jersey City, N.J.
Daniel A. Williamson, City Atty., Plainfield, N.J.
Matthew H. Powals, Asst. City Solicitor, Legal Dept., Atlantic City, N.J.
Raymond T. Bolanowski, First Asst. City Atty., Elizabeth, N.J.
Edward Trawinski, Asst. City Atty., Law Dept., Passaic, N.J.
Lucille LaCosta-Davino, Asst. Corp. Counsel, Newark, N.J.
Louis Childress, Asst. City Counsel, East Orange, N.J.
James M. Cahill, Asst. City Atty., New Brunswick, N.J.
James P. Granello, Murray and Granello, Little Silver, N.J., for City of Camden.
Rinaldo & Rinaldo, Elizabeth, N.J., for N.J. Firemen's Benevolent Ass'n.
Brian Doherty, Carroll, Panepinto, & Paolino, Jersey City, N.J., for Professional Fire Officers Ass'n.
Michael Herbert, Sterns, Herbert & Weinroth, Trenton, N.J., for N.J. State Firefighter Ass'n.
J.A. Pojanowski, III, Passaic, N.J., for City of Passaic.
Vicky Donaldson, East Orange, N.J., for Newark Bd. of Ed.
SAROKIN, District Judge.
On December 19, 1985 this court issued an opinion declaring invalid the civil service exams used by the State of New Jersey for promoting fire fighters to the first level supervisory rank of fire lieutenant or captain.[1] It was this court's finding that the exams administered in the twelve defendant municipalities "exhibited a pattern of impact adverse to minority candidates" in violation of both Title VII and the Uniform Guidelines on Employee Selection Procedures, 28 C.F.R. Section 50.14. See 625 F.Supp. 527, 534 (D.N.J.1985). Moreover, this court found that the exam was not job-related in that it did not adequately measure the skills, abilities or knowledge necessary for the position of fire captain. Id., at 547.
As a result, the court questioned whether the promotion eligibility lists developed on the basis of exam performance could properly be used, even for the limited purpose of making interim appointments. The parties were requested to consult in an effort to arrive at an interim promotion plan pending the creation and administration of a new, valid exam. As has been typical throughout this matter, the parties cannot agree as to the form of interim relief and each proposal submitted to the court has been met with objection from one or more parties.

BACKGROUND
Each of the defendant municipalities differs both as to the number of existing and potential fire captain vacancies and as to the racial composition of its candidate pool. Yet, with minor variations, the proposals for interim relief fall into three categories:
1) requests to make permanent appointments in rank order from the existing promotion *11 eligibility lists until such time as a new exam and new lists are developed;
2) requests to make permanent appointments in rank order from the existing promotion lists coupled with "make whole" relief  backpay and retroactive seniority for minority applicants who pass the new exam and are subsequently appointed to future vacancies;
3) requests to make provisional (or permanent) race-concious appointments from existing promotion eligibility lists with the understanding that all provisional appointees must pass the new exam and rank high in order to retain their appointments.
In addition, Vulcan Pioneers, Inc. and Firefighters League Advocating Minority Equality, intervenors representing the interests of minority fire fighters, urge the court to implement a three step affirmative action remedy that would both eliminate the adverse impact of the exams and remove the disparity between the racial composition of the fire fighter and fire captain rank. Intervenors propose the following: immediate appointment of minority candidates until the ratio of minority captains to minority applicants equals the ratio of non-minority captains to non-minority applicants; implementation of a one-to-one minority to non-minority promotion ratio for all future permanent appointments; and, race-conscious interim promotions.[2]
In essence, the proposals urge utilization of the existing lists and some form of affirmative relief for minorities. The court finds it inappropriate to utilize either of these concepts, or a combination thereof, for the purpose of granting even interim relief.

DISCUSSION
The Justice Department in initiating this action, sought to enjoin use of the existing promotion lists because they were the product of clearly unlawful exams. As contended by the federal government, and affirmed by this court's findings, the civil service tests had a discriminatory impact upon minorities and were not job related. It does not follow from these findings that those who passed the test and ranked high on the list are not qualified. Therefore, in rejecting the proposals submitted, it is not this court's concern that temporary appointments from the list would necessarily result in the appointment of unqualified persons.[3] Rather, it is this court's concern that to make appointments from those lists would undermine the very purpose of the litigation and defeat the rationale for declaring such tests invalid.
At issue in this case is both the minority group interest in overcoming the effects of historic hiring and promotion discrimination; and the individual interest of each fire fighter, minority and non-minority, in obtaining a fair promotion opportunity. Having concluded that the civil service exam unlawfully denied minorities fair promotion opportunities, to now permit appointments from lists generated by these invalid exams would totally vitiate the court's ruling and its purpose. That purpose was to require an examination which would truly and fairly test candidates for promotion and not discriminate against minorities in so doing.
Precisely because the promotion examinations administered were discriminatory and not job-related, they cannot be relied on to support the presumption that the minorities who failed are any less qualified than the non-minorities who passed. See Williams v. Vukovich, 720 F.2d 909 (6th Cir.1983); See also Guardians Ass'n of New York v. Civil Service, 630 F.2d 79 (2nd Cir.1980), cert. denied. 452 U.S. 940, 101 S.Ct. 3083, 69 L.Ed.2d 954 (1981). If the test was not job related, minority persons who did not pass may have passed a valid test. Those who did pass may have *12 ranked higher on the list. The same is true of non-minority persons who did not pass. They too have been deprived of passing or of a higher ranking by reason of the invalidity of the tests administered.
It is this court's obligation to "eliminate the discriminatory effects of the past as well as bar like discrimination in the future". Albemarle Paper Co. v. Moody, 422 U.S. 405, 418, 95 S.Ct. 2362, 2372, 45 L.Ed.2d 280 (1975) (quoting Louisiana v. United States, 380 U.S. 145, 85 S.Ct. 817, 13 L.Ed.2d 709 (1965)). To use the existing eligibility lists, for any purpose, would impermissibly perpetuate the adverse impact of the invalid past exams in violation of this court's obligation.
The past exams were wholly inadequate for purposes of selecting who ought to serve as fire captain. Neither the job analyses conducted nor the test developed fairly measured the skills related to effective performance by a fire captain. See 625 F.Supp. 527, 547 (D.N.J.1985). In effect, defendants' use of a testing mechanism, unrelated to job capability, operated "as a `built-in headwind'" for the minority candidates. Griggs v. Duke Power Co., 401 U.S. 424, 432, 91 S.Ct. 849, 854, 28 L.Ed.2d 158 (1971).
The Supreme Court has unequivocally expressed its belief that Congress' objective in the enactment of Title VII was a prophylactic one: to achieve equality of employment "opportunities" and remove "barriers" to such equality. Id., at 429-30, 91 S.Ct. at 852-53; See also Albemarle Paper, supra, 422 U.S. at 417, 95 S.Ct. at 2371. "Title VII strives to achieve equality of opportunity by rooting out `artificial, arbitrary, and unnecessary' employer-created barriers to professional development that have a discriminatory impact upon individuals." Connecticut v. Teal, 457 U.S. 440, 451, 102 S.Ct. 2525, 2533, 73 L.Ed.2d 130 (1982). The invalid exams and the lists derived from them, constitute just such "artificial, arbitrary, and unnecessary" barriers to fire captain promotions. By declaring the past tests to be invalid and requiring the future ones to be non-discriminatory and job-related, the court hopefully has assured an equal opportunity for promotions to minority and non-minority fire fighters alike.
Nevertheless, those who propose minority hiring in this interim period do so with considerable justification. In many cities blacks are vastly underrepresented in the supervisory ranks. In some instances they are non-existent. Therefore there is a great temptation to right those wrongs by immediate appointment.
Such appointments have considerable drawbacks however. Provisional appointments run the risk of termination upon the publication of the new test results. Permanent appointments may carry a stigma and pose morale and resentment problems in circumstances which require unswerving loyalty and respect for one's superiors. Obtaining appointment as a result of success on a fair examination given to all, is the most satisfactory alternative.
Even if this court were inclined to authorize immediate appointments, no valid criteria have been set forth for discerning who of the minority candidates eligible for promotion, is qualified. Proposals for immediate race-concious appointments are fatally flawed by their failure to suggest valid selection standards. Many of the minority fire fighters who have now satisfied the three year minimum time-in-grade promotion prerequisite, were not eligible for, or failed, the earlier tests. Setting aside the invalid exams, no other objective criteria presently exist for determining appropriate qualification. Courts which have imposed race-concious interim remedies under circumstances similar to those presented by this case, have consistently required proof of "objective qualification" before allowing either permanent or provisional promotion. See Paradise v. Prescott, 767 F.2d 1514, 1533 (11th Cir.1985) ("Moreover, only qualified black troopers may be promoted pursuant to the order ..."); See also Vanguards of Cleveland v. City of Cleveland, 753 F.2d 479 (6th Cir.1985), aff'd sub nom. Local Number 93 v. City of Cleveland, ___ U.S. ___, 106 S.Ct. 3063, 92 L.Ed.2d 405 (1986); Firefighters Institute v. City of St. Louis, Mo., 588 F.2d 235 (8th Cir.1978), *13 cert. denied. 443 U.S. 904, 99 S.Ct. 3096, 61 L.Ed.2d 872 (1979).
The makeshift remedies suggested by some of the cities, would permit appointment of non-minorities pursuant to the discriminatory lists, but would require minorities, not on the list, to take the civil service exam again. These suggestions bestow non-minorities with the benefits of discrimination, while placing the remedial burden, almost exclusively, on the minority group. This court cannot condone such proposals.
The Supreme Court has ruled that "[w]hen effectuating a limited and properly tailored remedy to cure the effects of prior discrimination, ... a `sharing of the burden' by innocent parties is not impermissible." Fullilove v. Klutznick, 448 U.S. 448, 484, 100 S.Ct. 2758, 2778, 65 L.Ed.2d 902 (1980) (quoting Franks v. Bowman Transportation Co., 424 U.S. 747, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1976)). Enjoining the use of discriminatory promotion eligibility lists is a reasonable remedy, narrowly tailored to eliminate the adverse impact of the exams. Such injunctive relief neither requires the hiring of unqualified minority firefighters, nor the discharge of any non-minority fire fighters. In Wygant v. Jackson Board of Education, ___ U.S. ___, 106 S.Ct. 1842, 90 L.Ed.2d 260 (1986), the Supreme Court held that denial of a future employment opportunity is a relatively nonintrusive remedial burden for innocent parties to bear. The intrusiveness here is so much less where non-minorities are not permanently denied their promotion opportunity, but only required to resubmit to a new, valid qualification exam.
Even, the non-minorities who ranked high, have no legally protected interest in promotions which can only be made pursuant to the discriminatory testing mechanism. Vanguards of Cleveland, supra, at 485. Consequently, their legal rights are not unduly trammeled by a reasonable injunctive remedy. Such injunction is necessary not only to vindicate the rights of minorities, but also to vindicate the rights of non-minorities denied a fair opportunity by the invalid testing procedure. While many of the relief proposals make provision for identifiable minority persons who may have been adversely affected by the earlier exam, they do not take into account the non-minorities who may have passed the test or fared better, if the test had been work related.
Eligible fire fighters, minority and non-minority alike, must share the responsibility for erasing a legacy of discrimination within the fire fighters ranks and strive collectively toward equal opportunity. See 625 F.Supp. 527, 531 (D.N.J.1985) ("There can be little doubt that the failure to have minorities in responsible positions of supervision is a direct result of historic discriminatory practices."). As a result of the implementation of the consent decree, a greater number of minority persons will be eligible to take the new test. No action should be taken which will minimize the number of positions available to all applicants participating on an equal basis.
In the interim period the court is concerned with serving two additional purposes. First, that no action be taken which will confer any advantage or disadvantage on any persons pending the new test. Second, that no action be taken or prohibited which will jeopardize the safety of the citizens or of their property in any of the cities affected by this action.
The court is convinced that these goals are best served by continuing or permitting the cities to initiate a system of rotating acting captains. Therefore, the court will sustain the position of the Justice Department and deny the motions and proposals of the other parties inconsistent therewith. Each municipality will be enjoined from making any provisional or permanent appointments. Each municipality may rotate acting captains in any reasonable fashion which will maximize the efficiency, safety and morale of the department, so long as such system provides no advantage or causes no disadvantage to anyone who will be eligible for promotion.[4]
*14 The court recognizes that this does not represent the optimum solution for the fire departments so affected. The defendant municipalities have poignantly expressed their concern over the stress prolonged rotation brings to bear on the team effort and the disruptive influence it has on managerial continuity. Efficiency and morale are better served by permanent appointments.[5] But, to date, no objective evidence has been presented to the court demonstrating that public safety is imperiled as a result of the rotational system. Furthermore, as noted previously, even if the court were inclined to authorize such permanent appointments, there exist no valid standards or criteria upon which the appointments could be made.
The recent decisions of the Supreme Court, although vindicating the actions already taken by this and other courts in entering affirmative action decrees, have made it clear that employment and promotion preferences based upon race are only to be implemented "where an employer or labor union has engaged in persistent or egregious discrimination or where necessary to dissipate the lingering effects of pervasive discrimination". Sheet Metal Workers' v. EEOC, ___ U.S. ___, 106 S.Ct. 3019, 3034, 92 L.Ed.2d 344 (1986). It was the Court's unequivocal message that in the majority of Title VII cases, courts "... will not have to impose affirmative action as a remedy for past discrimination, but need only order the employer to cease engaging in discriminatory practices ..." Id., at 3050. The Court's rulings mandate restraint. No affirmative action is to be invoked unless considered "necessary". Id., at 3050. Even where necessary, race-conscious relief should be narrowly tailored to avoid undue trammeling of the legitimate interests of third parties. Wygant v. Jackson Board of Education, ___ U.S. ___, 106 S.Ct. 1842, 1849-52, 90 L.Ed.2d 260 (1986). Specifically, courts were instructed to exercise their discretion "with an eye toward Congress' concern that race-concious affirmative measures not be invoked simply to create a racially balanced work force". Sheet Metal Workers', supra, 106 S.Ct. at 3050.
There is little question that this court has the discretion to order affirmative action here, even given the rigorous threshold these rulings establish. Justice Brennan clearly states in Sheet Metal Workers', supra, at 3037:
[A] district court may find it necessary to order interim hiring or promotional goals pending development of non-discriminatory hiring or promotion procedures. In these cases, the use of numerical goals provides a compromise between two unacceptable alternatives: an outright ban on hiring or promotions, or continued use of a discriminatory selection procedure.
But, upon exhaustive consideration, it is this court's firm conviction that the imposition of numerical goals, at this time, would not best serve either the group or individual interests here at stake. As noted above, the interest of minority fire fighters as a group in achieving promotion parity, is best served by keeping open the existing vacancies so that the larger percentage of minorities who will be eligible in 1987, may compete for promotion. While this delay imposes an additional burden on the minorities already victimized by the impact of past exams, the court is presently unable to determine objective qualification and is unwilling *15 to arbitrarily select among eligible minorities for promotion. Delay is a necessary burden for the protection of the larger group interest. Also, the court believes that awaiting a new exam will provide each individual, minority and non-minority, an opportunity to conclusively prove his/her capability as a fire captain. The delay imposes a trying burden in this interim, that will hopefully be warranted by the long run gains in equality of opportunity.
Finally, the onerous delay in large measure has been brought about by the parties themselves. As the court previously noted, if the time and money spent in litigation had been devoted to the development of a valid test, the need for interim relief would not exist. The test would have been developed and given by this time, rather than having the process merely commenced at this late date. The court hereby orders the State of New Jersey, by assigning this matter priority attention and resources, to comply with the projected November 1987 deadline for administration of the new exam.
The court continues to recognize the frustration of those who have spent their time and money preparing for, taking and passing the prior test or tests. The challenge to those tests by the Justice Department and the court's sustaining of that challenge will require them to undergo the process again. However, in doing so, all those who seek promotion will be assured of an equal opportunity to be tested for those qualities which the position requires. Such a test, which is fairly constructed and is free of discrimination, hopefully will obviate the need for any affirmative action, since it will provide all qualified persons with an equal opportunity to compete for the available positions. The goal is to end affirmative action, not because it is wrong, but because, and when, it is no longer necessary.

ORDER
This matter having been opened to the Court upon application by the various defendant municipalities for interim relief, namely, leave to use existing promotion lists to make provisional and permanent appointments to the rank of fire captain (also known as fire lieutenant), and this court having heard oral argument and considered the relief proposals submitted by all parties, and for good cause shown,
IT IS this 14 day of October, 1986, hereby
ORDERED that defendants are enjoined from using the existing promotion eligibility lists for the purpose of either provisional or permanent appointments; and it is further,
ORDERED that pending the results of a new, valid exam, each municipality shall continue to rotate acting captains in any reasonable fashion which will maximize the efficiency, safety and morale of the department, so long as such system provides no advantage or causes no disadvantage to anyone who will be eligible for promotion.
NOTES
[1] The first level supervisory rank will hereinafter be referred to as "fire captain".
[2] It should be noted that intervenors, while respresenting a group of affected minority fire fighters, do not speak for all interested minorities. Other minority fire fighters have informally addressed this court, requesting that no appointments be made so that the many recently hired minorities, not eligible for previous exams, may be guaranteed an opportunity to compete for promotion.
[3] Other courts, though, have expressed concern that "[r]anking candidates according to their performance on a non-job related examination does not necessarily result in the selection of qualified candidates." Williams v. Vukovich, 720 F.2d 909, 924 (6th Cir.1983); see also Guardians Ass'n of New York v. Civil Service, 630 F.2d 79 (2nd Cir.1980), cert. denied 452 U.S. 940, 101 S.Ct. 3083, 69 L.Ed.2d 954 (1981).
[4] The City of Plainfield seeks leave to extend the duration of each fire fighter's rotation to between six and eight months. The Justice Department proposes three month rotations. In the interest of bolstering morale and improving efficiency, this court will order the maximum length rotation possible which would still provide every fire fighter eligible for promotion an opportunity to act as captain prior to taking the new exam. The parties are ordered to determine what that time would be and implement same.

East Orange is also in a unique situation. Nothing in this order shall be construed to override the collective bargaining obligations now existing in East Orange.
[5] This court respectfully reminds defendants that it was willing to entertain alternative proposals for interim relief, perhaps even permitting limited appointments, if submitted by consent of the parties. The recent Supreme Court ruling in Local 93 v. City of Cleveland, ___ U.S. ___, 106 S.Ct. 3063, 92 L.Ed.2d 405 (1986), makes clear that obligations created by voluntary agreement can exceed the scope of relief a court, acting in accordance with the dictates of its judicial role, may deem appropriate.